**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Yahui Song, Ph.D., | Civil No. 11-CV-427 (ADM/TNL) |
| Plaintiff, | |
| v. | **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF** |
| Regents of the University of Minnesota, L. James Nixon, M.D., Barbara K. Patrick, M.D., Sheila M. Specker, M.D., Theodore R. Thompson, M.D., Kathleen V. Watson, M.D., and John Does 1-15, | |
| Defendants. | |

## Introduction

Plaintiff, a former student at the University of Minnesota Medical School, received federal loans to pay for tuition and expenses for Fall 2009. The loan proceeds disbursed directly into Plaintiff's University account. In anticipation of her enrollment, the University allocated a portion of the proceeds to tuition and sent the remaining amount to Plaintiff via direct deposit in her bank account. Plaintiff, however, did not earn any financial aid because she did not take any classes in Fall 2009 and was subsequently dismissed from the Medical School. The University followed its established procedure and returned all of the loan proceeds to the lender, billing Plaintiff for that portion she previously received from the University. That bill has not been paid. Pursuant to established University procedure, the University placed a financial hold on

Plaintiff's University account, which, in part, prohibits the issuance of an official transcript.

Now, two years later, Plaintiff seeks to bypass her acknowledged financial obligations and asks this Court to umpire a contract dispute between the parties. Plaintiff has not satisfied her burden of proof to obtain injunctive relief, having failed to establish irreparable harm, likelihood of success on the merits or any other *Dataphase* factor. The Court should therefore deny the motion.

## **Background**

In 2005, Plaintiff matriculated at the University of Minnesota Medical School. During her enrollment, she applied for and accepted financial aid from the University of Minnesota in varying forms, including federal student loans.[1] On July 28, 2005, Plaintiff executed a Master Promissory Note for the William D. Ford Federal Direct Loan Program ("Ford loans"). In so doing, Plaintiff certified that she would "use the proceeds of loans . . . for authorized educational expenses that I incur and I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis . . . ." Plaintiff also authorized "my school to pay to the U.S. Department of Education (ED) any refund that may be due up to the full amount of the loan." The loans become immediately due if the student is not enrolled at least half-time or if the student fails to use proceeds of the loan solely for educational expenses.[2]

---

[1] Song Decl. ¶ 2.

[2] Affidavit of Kris Wright Ex. 1.

On July 31, 2009, in anticipation of her enrollment in Medical School for the term Fall 2009, Plaintiff took out a Ford loan in the amount of $16,777, a Minnesota Medical Foundation Loan of $2,000, and received a non-resident tuition waiver of $2,298.16. These funds were deposited in Plaintiff's University account. From these amounts, $11,167 was paid to the Medical School for tuition. Certain University fees were also paid from these amounts. The University sent to Plaintiff via direct deposit the remaining $7,514.96 for living expenses, which cover room, board, transportation, books, supplies and personal/miscellaneous expenses related to Plaintiff's enrollment in Fall 2009. The University had similarly allocated and disbursed Plaintiff's loan proceeds throughout her University enrollment.[3]

On August 13, 2009, Plaintiff's academic progress was suspended and she was not permitted to begin classes in Fall 2009. Plaintiff concedes that she "was prohibited by the University from attending any classes of Fall 2009,"[4] and that the University canceled all of her registered classes for Fall 2009.[5] Plaintiff never attended any course or clinical rotation in Fall 2009.[6]

---

[3] Wright Aff. ¶ 3; Wylie Aff. Ex. 2; Song Decl. ¶ 4-5.

[4] Song Decl. ¶ 6.

[5] Id. ¶ 7.

[6] Id. ¶ 8.

Plaintiff used the loan proceeds for "travel to China" and other, unspecified expenditures.[7]

**<u>University Repayment of Grant Funds</u>**

The University has an established practice of returning federal financial aid directly to the federal program from which the aid was received under certain circumstances. For example, in the event a student is not enrolled as required by the terms of the relevant loan, the University will return aid proceeds prorated to reflect the "earned" amount, i.e., the number of days a student attended classes. The University returns the "unearned" portion of the aid to the federal program from which the aid was received.[8] The University routinely returns such funds to relevant financial aid programs and notifies students that unearned aid could result in owing aid funds to the University, the government, or both.[9]

Because Plaintiff did not attend any classes in Fall 2009, none of her aid was "earned." The University reversed the tuition and fee charges in Plaintiff's account. The University then returned all of Plaintiff's financial aid directly to their respective lenders, including that portion attributed to tuition and fees as well as the amount the University disbursed directly to Plaintiff from her University account. The University promptly

---

[7]   *Id.* ¶ 5.

[8]   Wright Aff. ¶ 5.

[9]   *Id.* ¶ 6.

billed Plaintiff for the aid she received via direct deposit from the University, $7,514.96. The debt remains unpaid.[10]

The University's collection offices on the Twin Cities campus are handling Plaintiff's account.[11]

**Imposition of Financial Hold**

The University may impose a hold on a student account if the student is "financially indebted to the University (e.g., for unpaid tuition, fees, fines, or delinquent health service payments) or for disciplinary or scholastic reasons." As a consequence of such a hold, students "may not register or, in many cases, obtain transcripts or [a] diploma until that hold is cleared with the office imposing the hold." To remove a hold from a student record, the student "must first pay the debt owed."[12]

As a result of the unpaid debt, the University placed a financial hold on Plaintiff's account. Such a hold prevents Plaintiff from registering for University classes, obtaining a degree, or ordering an official transcript from the University.[13]

---

[10] *Id.* ¶7; Song Decl. Ex. C. Plaintiff's account also contains outstanding charges for other expenses, including transcript fees (for transcripts she apparently ordered prior the hold but did not pay for) and a $111 late fee incurred from Boynton Health Services. The University also charges standard late and installment fees related to the nonpayment of loan proceeds. Plaintiff incurred such fees, including a monthly $30 late charge for failure to repay the disbursement and a bi-annual $35 Installment Plan fee. Wright Aff. ¶ 8.

[11] Wright Aff. ¶ 14; Frisch Aff. Ex. 4.

[12] Wright Aff. ¶ 10, Ex. 3.

[13] Wright Aff. ¶ 12; Song Decl. Ex. D.

**Request for Transcript**

In August 2011, almost two years after the hold was placed on Plaintiff's account, and many months after Plaintiff initially filed the original Complaint in this action, Plaintiff requested that the University lift the financial hold on Plaintiff's account and issue an official transcript. In light of the unpaid debt, the University has declined to remove the hold from Plaintiff's account.[14]

Plaintiff now moves the Court to order the University to lift the financial hold on her University account and issue an official transcript to Plaintiff.[15]

**Argument**

Plaintiff has failed to establish the required elements to obtain injunctive relief. "The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy." *General Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 316 (8th Cir. 2009). In evaluating a request for injunctive relief, courts consider (1) the threat of irreparable harm to the moving party; (2) the weight of this harm as compared to any injury an injunction would inflict upon other interested parties; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. *Dataphase*

---

[14] Plaintiff has also sought to obtain the University's official certification of her transcript through at least one third party agency. Frisch Aff. Ex. 4. The University did not certify Plaintiff's transcript because of the hold on Plaintiff's account. Frisch Aff. Ex. 5. The hold on Plaintiff's account prevents the issuance of an official transcript, regardless of the source of the request. Wright Aff. ¶ 15.

[15] Plaintiff's motion to amend is moot, as the University has stipulated to the filing of the Second Amended Complaint and has answered the same.

*Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Plaintiff has failed to meet her burden to establish any of the *Dataphase* factors.

### A.   There is no threat of irreparable harm to Plaintiff.

Plaintiff has not demonstrated any threat of irreparable harm related to the University's financial hold and refusal to issue an official transcript until Plaintiff pays her debt to the University. "A party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *General Motors Corp.*, 563 F.3d at 319. Failure to demonstrate irreparable harm is sufficient ground to deny a preliminary injunction. *Id.* at 320. Plaintiff's claimed harm is not certain or great or of such imminence that there is a clear and present need for equitable relief.

First, Plaintiff has not identified a certain harm. Plaintiff has not submitted any evidence that an official University transcript is required prior to the consideration of her application to another medical school or residency program. Plaintiff has not submitted any evidence that even with an official University transcript, she would be eligible for admission, let alone likely to actually gain admission, to another medical school or residency program. Plaintiff has no evidence that any medical school or residency program rejected her application because she has not supplied an official University transcript. Indeed, Plaintiff has been enrolled at Hebei Medical University in China; she

7

apparently did not require an official University transcript to gain admission to such a program.[16]

Second, the purported harm to Plaintiff is not imminent. The financial hold has been in effect since October 2009, almost two years. Plaintiff has not submitted any evidence that she has suffered any harm over the last two years. There is no evidence that Plaintiff urgently requires her official transcript or will forever forego admission to another medical school or residency program. Plaintiff would be hard pressed to make such an assertion, given her attendance at Hebei Medical University. There is no evidence that her opportunity to apply to other medical schools or residency program is "foreclosed" in the absence of immediate relief, or at all.

To that end, Plaintiff has an adequate remedy at law. Plaintiff claims that she desires an official transcript to gain admission at another medical school or residency program which, as she describes, is an attempt at *mitigation* of her damages. Any delay in the application process is measurable by money damages, e.g, purported wage loss or tuition increase associated with a delay in admission. Plaintiff summarily alleges that such money damages are "less than adequate" to compensate for her delayed entry, but fails to offer any evidence in support of that allegation or even an explanation for such an assertion.

Finally, Plaintiff can remedy her own alleged harm. The University will lift the hold upon payment of Plaintiff's outstanding debts, entitling her to receive an official

---

[16] Frisch Aff. Ex. 1.

transcript from the University. Plaintiff has not submitted any evidence of her inability to pay the debt other than her own self-serving assertion.[17] There is no evidence of any impending "financial catastrophe." In the two years since she received the unearned proceeds of her federal loans, Plaintiff has bankrolled this litigation, has attended medical school in China, and has financed trips between the United States and China and perhaps elsewhere. The University expects that it will discover additional discretionary expenditures by Plaintiff in discovery and that Plaintiff has had an ability to refund the monies to the University, but has simply chosen not to do so.[18]

Because Plaintiff has failed to establish the threat of irreparable harm, the Court should deny the requested relief.

### B.   Plaintiff is not likely to succeed on the merits.

Plaintiff alleges she has a "good chance" to succeed on the merits because the University was not obligated to repay her debt and that the University "hijacked" her federal loan. These fanciful allegations do not establish a likelihood of success of any cognizable cause of action.

#### 1.   Plaintiff has no private right of action under the Higher Education Act.

The federal regulations cited by Plaintiff do not contemplate or afford Plaintiff a private right of action against the University for repayment of her financial aid. *See*

---

[17]   No such information was included in Plaintiff's initial disclosures. The University has requested such information in discovery, but Plaintiff has not yet responded.

[18]   The University is currently awaiting Plaintiff's discovery responses on this subject.

*McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002) (holding that the Higher Education Act did not provide a private cause of action for parents of college-bound students). The Higher Education Act, under which Section 668 was promulgated, provides for an extensive enforcement scheme on the part of the Secretary of Education, and precludes an implied private cause of action. *Id.* at 1223; *see also Labickas v. Ark. State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) ("We conclude that no private right of action is implied under the HEA for student borrowers.").

Even so, the University's actions do not violate the federal regulations. Plaintiff correctly notes that the federal regulations do not impose upon the University an affirmative responsibility to refund loan proceeds in the event the student is no longer enrolled at the University or is otherwise ineligible for the loans. However, the regulations do not prohibit the University from returning such funds. There is no authority, federal or otherwise, that prohibits the University from refunding federal financial aid and then billing a student for the same. The University's published procedures make clear that repayment will occur and the student will be billed if the student does not meet eligibility requirements.

In fact, the University's actions with respect to Plaintiff's account are consistent with the purpose and spirit of the federal regulations. Section 668.21 is titled "Treatment of title IV grant and loan funds if the recipient does not begin attendance at the institution." The statute considers a student not to have begun attendance "if the institution is unable to document the student's attendance at any class during the payment period or period of enrollment." 34 C.F.R. § 668.21(c). Under section (a)(1), the

institution is obligated to return Federal Perkins Loan, FSEOG, TEACH Grant, Federal Pell Grant, ACG, and National SMART Grant program funds, including amounts credited to the student's account or disbursed directly to the student. Under section (a)(2), the institution is also obligated to return all FFEL and Direct Loans credited to the student's account, but is not responsible for returning funds disbursed directly to the student. Section 685.306 further provides that "[b]y applying for a Direct Loan, a borrower authorizes the school to pay directly to the Secretary that portion of a refund or return of Title IV, HEA program funds from the school that is allocable to the loan." The school is required to "pay that portion of the student's refund or return of title IV, HEA program funds that is allocable to a Direct Loan to the Secretary" and to provide notice to the borrower of any refund made on the student's behalf. *Id.*

There is no University act that runs afoul or contravenes the intent of these regulations. Although Plaintiff originally registered for Fall 2009 classes, she did not attend any such classes. The University refunded that portion of the loan attributed to Fall 2009 tuition and fees, as required by these regulations. The University also refunded the balance of the loan and notified Plaintiff of the refund made on her behalf, as contemplated by these regulations. Plaintiff's claim otherwise is without merit.

### 2. The University's actions were proper and approved by Plaintiff.

Plaintiff failed to prove that the University's actions violate any other law. There is no evidence whatsoever that the financial hold on Plaintiff's account is anything other than the rudimentary application of the University's established procedures when a debt

11

is owed on a student account.[19] Plaintiff has a debt in excess of $100, which is being handled by the relevant University collection offices.[20] There is no evidence that the University's actions amount to retaliation in violation of federal or state law, or that the University's actions are illegal at all. In fact, it was the Plaintiff who engaged in

---

[19] Defendants question the Court's jurisdiction over this motion and Plaintiff's claim to the extent it is based on the common law or Section 1981. "[T]he basic relationship between a student and an educational institution is contractual in nature." *Alsides v. Brown Inst., Ltd.,* 592 N.W.2d 468, 472 (Minn. Ct. App. 1999). The Eleventh Amendment bars federal court jurisdiction over state law claims against unconsenting states and their employees acting in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that a suit against a public employee in her official capacity is an action "directly against the public entity of which the official is an agent."). This constitutional bar applies with equal force to pendent state law claims. *Pennhurst*, 465 U.S. at 121 ("neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."). Eleventh Amendment immunity extends to Section 1981 claims. *Sallis v. Univ. of Minn.,* 322 F. Supp. 2d 999, 1004 n.1 (D. Minn.2004) (Kyle, J.).

The University of Minnesota enjoys such Eleventh Amendment immunity. *See Treleven v. Univ. of Minn.,* 73 F.3d 816, 818 (8th Cir.1996); *see also Mayer v. Univ. of Minn.*, 940 F. Supp. 1474, 1476 (D. Minn. 1996) ("The Eighth Circuit Court of Appeals has conclusively established that the University of Minnesota is an instrumentality of the state and is therefore entitled to share in the state's Eleventh Amendment immunity."). Defendants have not and do not waive their immunity from suit and, accordingly, this Court lacks jurisdiction to adjudicate the merits of claims for which Eleventh Amendment immunity has not been expressly abrogated.

To the extent Plaintiff alleges her request for injunctive relief implicates Title VI for which this Court retains jurisdiction, Plaintiff has failed to present any evidence that she is likely to succeed on the merits of her claim of discrimination. A preliminary ruling on Plaintiff's discrimination claim would be grossly premature, as Plaintiff has not responded to any of the University's discovery requests or supplied any documents in conjunction with her Rule 26 disclosures. In any event, there is no evidence that the University discriminated against Plaintiff in the handling of her University account in violation of Title VI.

[20] Wright Aff. ¶ 14. Plaintiff's debt to the University exceeds $100 even in the absence of the debt generated from the University's refund of loan proceeds. *Id.* ¶ 8.

wrongful action. Plaintiff used the University as her vehicle to obtain unearned federal funds and then spent those funds on personal matters unrelated to academia.

Plaintiff now accuses the University of being an "interloper" and "hijacking" her loans. Plaintiff, however, happily accepted the University's management of her federal loans throughout her enrollment in Medical School, including the direct deposit of tens of thousands of dollars of loan proceeds from her University account into her personal bank account. Plaintiff has waived any complaint about the University's management of her account now. *See Physical Distribution Servs., Inc. v. R.R. Donnelley & Sons Co.*, 561 F.3d 792, 795 (8th Cir. 2009) (holding that rights may be waived by conduct "so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary"); *see also In re Estate of Sangren*, 504 N.W.2d 786, 790 (Minn. Ct. App. 1993) (holding that plaintiff waived rights by failing to object until four months after the allegedly improper conduct).

In fact, this is not the first time that Plaintiff has abused federal financial aid and was forced to return funds directly to the University. During the summer term 2007, Plaintiff withdrew from her Medical School courses prior to earning all of her financial aid. The University returned the loan proceeds to the lender and billed Plaintiff $6,342.00 on July 7, 2007 for the aid she had been awarded but had not earned. The University placed a hold on Plaintiff's account which prohibited Plaintiff from registering for classes until the monies were repaid to the University. Plaintiff then repaid those amounts in a series of payments. Following the final payment, the University lifted the

financial hold and Plaintiff was then permitted to register for classes when she returned from her leave of absence.[21]

In light of her prior experience—to which she never objected—Plaintiff is well aware of the University's procedure in returning unearned financial aid to the lender, Plaintiff's obligation to return improperly received financial aid to the University, and the University's imposition of financial holds until such debts are fully paid.  Plaintiff is also aware of her ability to use self-help to remedy such holds.  Again, Plaintiff has waived her right to complain about the University's procedures now.

Finally, many courts have confirmed that institutions of higher education may withhold transcripts pending receipt of payment or arrangement of a payment plan for an unpaid tuition balance or other debt.  *See, e.g.*, *Juras v. Aman Collection Serv.*, 829 F.2d 739, 743 (9th Cir. 1987); *Johnson v. Edinboro State Coll.*, 728 F.2d 163, 166 (3d Cir. 1984); *Ihenacho v. Ohio Inst. of Photography & Tech.*, No. 24191, 2011 WL 3245119, at *6 (Ohio Ct. App. 2d Dist. July 29, 2011).  The University's actions are no different.

In light of the foregoing, Plaintiff is not likely to succeed on the merits of any cognizable claim related to the propriety of the financial hold.

---

[21] Wright Aff. ¶ 13.  Indeed, the University believes that Plaintiff's acts were deliberately improper as she (1) enrolled in a course while on her leave of absence, (2) received the financial aid, (3) withdrew from the course, and (4) attempted to keep the financial aid funds that were awarded to her.  Frisch Aff. Ex. 2.

### C. The balance of harms and public interest weigh in opposition to injunctive relief.

The balance of harms and public interest considers "the injury that granting the injunction will inflict on other parties litigant." *Dataphase*, 640 F.2d at 113. The Court should not impair the University's right or ability to use legitimate means within its disposal in an attempt to secure repayment of debts. As a public entity in receipt of state funding, the University's interest in protecting and enforcing its ability to collect debts is a matter of heightened public concern. The public has an interest in allowing the University to maintain leverage to collect debts and, as Plaintiff acknowledges, "that the University be paid legitimate claims."[22] Granting injunctive relief to Plaintiff here would invite similarly situated students who are delinquent on their University accounts to bypass acknowledged debts and hamstring the University's ability to collect monies owed.

Conversely, the public interest disfavors allowing Plaintiff to escape her debt or to use federal financial aid for improper purposes. Plaintiff has no right to retain monies she did not earn and rightfully owes. Plaintiff did not attend a single day of classes in Fall 2009. Plaintiff took educational loan proceeds from the United States government for personal travel to China, an expenditure that was not in furtherance of any educational interest.[23] Federal financial aid is intended to be used for expenditures related to the

---

[22]   Pl.'s Mem. 8.

[23]   The University is also aware that Plaintiff has, at least on one occasion, loaned money to another expelled Medical Student to enable that student to file a claim against the University. Frisch Aff. Ex. 3.

enrollment and education of qualified students, not for global personal travel or to fund litigation.

The hold on Plaintiff's account plays particular importance here. Plaintiff currently resides in China, has not been back to the United States during the pendency of this action, and has no known assets in the United States. The University has no power to independently evaluate Plaintiff's assets or ability to pay, and Plaintiff has not been forthcoming with such information in this action. University holds further the University's interest in compelling students to comply with University policies, pay existing debts and fulfill their end of the contractual bargain with the University. This Court should not issue an order which disregards and effectively forgives Plaintiff's debt to the University. Accordingly, the balance of harms and public interest favor retention of the financial hold on Plaintiff's University account.

## Conclusion

For the foregoing reasons, Defendants request that the Court deny Plaintiff's motion for injunctive relief.

DATE: October 19, 2011	MARK B. ROTENBERG
	General Counsel
	University of Minnesota

	By: s/ Jennifer F. Frisch_____
	Jennifer L. Frisch (#257928)
	Associate General Counsel
	360 McNamara Alumni Center
	200 Oak Street SE
	Minneapolis, MN 55455-2006
	(612) 624-4100

	ATTORNEYS FOR DEFENDANTS