UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Yahui Song, Ph.D.,

        Plaintiff,

v.

Regents of the University of Minnesota,
L. James Nixon, M.D., Barbara K. Patrick, M.D.,
Sheila M. Specker, M.D., Theodore R.
Thompson, M.D., Kathleen V. Watson, M.D.,
and John Does 1-15,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-427 ADM/TNL

---

Richard T. Wylie, Esq., Minneapolis, MN, on behalf of Plaintiff.

Jennifer L. Frisch, Esq., Associate General Counsel, University of Minnesota, Minneapolis, MN, on behalf of Defendants

---

## I. INTRODUCTION

On November 9, 2011, the undersigned United States District Judge heard oral argument on Plaintiff Yahui Song, Ph.D.'s ("Song") Motion [Docket No. 17].[1] The Regents of the University of Minnesota ("University") and the other parties (collectively "Defendants") oppose the Preliminary Injunction Motion. Mem. in Opp'n to Mot. For Inj. Relief [Docket No. 29]. For the reasons set forth below, Plaintiff's Preliminary Injunction Motion is denied.

---

[1] Song's Motion requested leave to file a second amended complaint and for a preliminary injunction. Magistrate Judge Tony N. Leung granted the motion to amend on October 4, 2011, so the remaining matter before this Court is the Motion for Preliminary Injunction.

## II.  BACKGROUND

Song, a United States citizen and California resident, attended the University of Minnesota Medical School ("Medical School") between August 2005 and the fall semester of 2009.  Second Am. Compl. [Docket No. 3] ¶¶ 1(c), 4, 7.  The University operated the Medical School, and the individually named defendants were faculty and administrators at that school. Id. ¶ 5–6.  In May 2007, Song took a one-year leave of absence.  Id. ¶ 15.  In February 2008, Song was reinstated at the Medical School on the condition that she take the United States Medical License Exam Step 1 ("USMLE Step 1") prior to August 2009.  Id. ¶¶ 16–17.  Song experienced anxiety problems in July 2008 and requested an extension of her USMLE Step 1 date.  Id. ¶ 20.  In response, she was required to attend a meeting with the Medical School's Committee on Student Scholastic Standing ("COSSS") scheduled for August 14, 2008.  Id. ¶ 24.

Song passed USMLE Step 1 on August 6, 2008.  Id. ¶ 26.  Song requested permission to not attend the August 14, 2008 meeting.  Dr. Kathleen Watson denied her request.  Id. ¶¶ 29–30.  The day after the meeting Song's class registration was cancelled, she was prohibited from registering for third-year courses, and she was required to "shadow a hospitalist" for six weeks. Id. ¶¶ 31–32.  During these six weeks, Song was not a registered student and therefore did not receive student aid.  Id. ¶ 33.  She resumed classes in November 2008.  Id. ¶ 37.  Song was notified in April 2009 that she had failed a medical course, and on May 27, 2009, Song was placed on mandatory "immediate medical leave" for her to undergo "thorough physical and psychiatric evaluations."  Id. ¶¶ 52, 76.  On July 6, 2009, Song's six-week medical leave ended and she returned to her medical school duties, but she failed another class and was placed on indefinite suspension on August 13, 2009.  Id. ¶¶ 98, 100.  Song was prohibited "access to any

clinical site" as of September 3, 2009, and on September 6, she was informed that her health insurance had been terminated. Id. ¶¶ 107, 109. After a hearing with COSSS in February 2010, the Medical School notified Song in March 2010 that she was dismissed from the Medical School due to failing grades. Id. ¶¶ 114–15, 118.

In July 2009, Song obtained a Ford Unsubsidized Direct Loan ("Direct Loan") for her fall semester tuition and living expenses. Song Decl. [Docket No. 20] ("First Song Decl.") ¶ 3. The Direct Loan was applied to Song's tuition and costs, and the remaining $7,514.96 was deposited in Song's personal bank account for living expenses. Id. ¶ 4. After Song was suspended, the University returned the entire amount of Song's loan to the government, including the amount deposited in Song's bank account. Id. ¶¶ 6, 12. The University now seeks to have Song repay the funds[2] originally disbursed to Song's bank account, since those Direct Loan funds were contingent on Song's attendance at the University. Id. ¶ 13. University policy is to not issue transcripts to students, such as Song, with a financial hold on their records. First Song Decl., Ex. D ("Song's Record Hold"). Song received a medical degree from Hebei Medical University in China after her dismissal from the University of Minnesota Medical School. She now seeks her transcript from the University in order to apply to medical programs in the United States. First Song Decl. ¶ 18; Second Song Decl. [Docket No. 34] ¶ 4. On September 9, 2011, Song filed a Preliminary Injunction Motion seeking an Order to the University to issue her official transcripts and restrain from attempting to collect the debt at issue.

---

[2] The University is seeking $7,514.96 plus accumulated interest and late charges, totaling $8,425.96. First Song Decl. ¶ 13.

## III.  DISCUSSION[3]

**A.      Standards of Review**

In considering a preliminary injunction, courts apply the factors set forth in Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109 (8th Cir. 1981): (1) threat of irreparable harm to the movant; (2) harm to other parties if the relief is granted; (3) probability of movant's success on the merits; and (4) effect on public interest.  Id. at 113.  The movant "bears the burden of establishing the necessity of this equitable remedy."  Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 316 (8th Cir. 2009).

**B.      Application of the Dataphase Factors to Song's Preliminary Injunction**

In support of her Preliminary Injunction Motion, Song argues that she is likely to succeed on the merits because the University had no obligation to return the loan funds to the Department of Education, and internal and external policies prohibit them from withholding her transcript.  Mem. in Supp. of Mot. for Prelim. Inj. [Docket No. 19] 6–8.  Song also contends that as a result of the University's refusal to issue her transcript, she will face irreparable harm by being precluded from applying to other medical schools and residency programs in the United States.  Id. 6.  Song further urges that the University will not be harmed by releasing her transcripts, and

---

[3]On November 9, 2011, Song improperly emailed this Court an ex parte communication attempting to answer several questions raised at the hearing on that same day.  See Letter to District Judge [Docket No. 40]. The communication was made outside of the presence of counsel.  This Court subsequently posted Song's communication on the CM/ECF system and responded to Song's email with a November 14, 2011 Letter [Docket No. 41].  Regardless, the information in Song's email does not affect the analysis.

that public interest will be affected by allowing the University to withhold Song's transcript when she has invested substantial amounts of money in her education. Id. 6, 8.

### 1. Irreparable Harm

Irreparable harm is established if the movant shows the harm is certain, great, and imminent. Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). Further, a showing of irreparable harm requires the movant have no adequate remedy at law. Gen. Motors Corp., 563 F.3d at 319. Failure to show irreparable harm is sufficient to deny a preliminary injunction motion. Id. at 320.

Song has failed to show irreparable harm that is either certain or imminent. Song's harm is not certain because she has not demonstrated an inability to continue her medical education resulting from the University's withholding of her transcript. On the contrary, Song enrolled and graduated from Hebei Medical University in China after the University's hold was placed on her records. First Song Decl. ¶ 18; Second Song Decl. ¶ 4. Although Song argues that she will be unable to recover the value of her lost time in the medical profession, there is no showing of the likelihood of harm beyond mere speculation.

Song has failed to establish the imminent nature of her alleged harm. The hold was placed on Song's account in October 2009, more than two years ago. Plaintiff has failed to demonstrate how the alleged harm is now imminent after this passage of time. No evidence has been provided showing that the University's continued withholding of her transcript is creating an imminent harm; in fact, the harm appears to be less imminent now in that Song successfully graduated from medical school in China. First Song Decl. ¶ 18; Second Song Decl. ¶ 4.

Moreover, a sufficient remedy at law exists for Song. Should Song prevail in her claims, the monetary damages of wage loss and tuition increase are quantifiable and sufficient to compensate her for the alleged harm in this case. Song has not provided any evidence supporting her assertion that she is unable to repay the loan funds to the University. Counsel for the University stated at the hearing that repayment of the loan will release her transcript. Since the irreparability of Song's harm has not been established, her preliminary injunction motion is denied.

### 2. Relative Harm to Either Party and Public Interest

Song argues "[t]here is clearly no harm to the University" in "[l]osing the leverage of withholding Plaintiff's official transcript hostage." Mem. in Supp. of Mot. for Prelim. Inj. 6. However, the hold on Song's transcript is the University's only means, short of a lawsuit, for encouraging loan repayment. Public interest also weighs in favor of repayment of school loans. The University is a state institution receiving state and federal funds, therefore heightening the public interest in the repayment of its student loans. Song's argument that public interest would be served by lifting the hold on a transcript of a student "who has invest (sic) hundreds of thousands of dollars to obtain a medical education, " Id. 8, only identifies a private, rather than public, interest. Because of the potential harm to the University and because public interest favors repayment of school loans, Song's preliminary injunction motion is denied.

### 3. Likelihood of Success on the Merits

Song is also unlikely to succeed on the merits. Song's Higher Education Act (the "HEA") claims are unlikely to succeed because no implied private right of action under HEA

exists for student borrowers.  Labickas v. Ark. State Univ., 78 F.3d 333, 334 (8th Cir. 1996). Additionally, while the HEA states that "the institution is not responsible for returning the funds," 34 C.F.R. § 668.21(a)(2)(ii), it does not prohibit institutions such as the University from returning the funds.  Song's argument that the University's repayment of the loan to the federal government was illegal is unavailing given the plain language of the statute, and she is unlikely to succeed on her HEA claims.

Song's federal claims - Title VI; First Amendment; and Fifth Amendment - all result from the University's policy of placing a hold on records of students owing more than $100. Song's evidence does not appear to establish that she was singled out on the basis of race, color, or national origin in contravention of Title VI, 42 U.S.C. § 2000(d).  Her evidence also fails to demonstrate that her right to free speech was violated contrary to the First Amendment of the United States Constitution, or that she was denied substantive or procedural due process contrary to the Fifth Amendment.

Finally, Song's state law claims - the Minnesota Human Rights Act; Minn. Stat. §§ 144.291–144.298, 13.05; a breach of contract claim; a negligence claim; and a defamation claim - stem from a contractual dispute and are all before this Court premised on supplemental jurisdiction.  Since the federal and HEA claims over which this court has original jurisdiction are likely to be unsuccessful, this federal court would likely decline to exercise jurisdiction over the remaining state law claims under the pendent jurisdiction doctrine.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Dodson v.

Univ. of Ark. for Med. Scis., 601 F.3d 750, 756 (8th Cir. 2010) (quoting Carnegie-Mellon Univ. V. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Moreover, the aforementioned state law claims, as well as Song's claim of 42 U.S.C. § 1981 violations, are also likely precluded under the doctrine of sovereign immunity.  The Eleventh Amendment of the U.S. Constitution prohibits federal jurisdiction over claims brought against public entities or public employees acting in their official capacity.  See Serna v. Goodno, 567 F.3d 944, 946 (8th Cir. 2009); Sallis v. Univ. of Minn., 322 F. Supp. 2d 999, 1004 n.1 (D. Minn. 2004) (applying sovereign immunity to claims under 42 U.S.C. § 1981).  Because her federal, state, and HEA claims are unlikely to succeed on the merits, Song's preliminary injunction motion is denied.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Song's Preliminary Injunction Motion [Docket No. 17] is **DENIED.**

BY THE COURT:

　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 21, 2011.